UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RABBIDEO RAMRATTAN,

                          Plaintiff,                COMPLAINT AND
                                                JURY TRIAL DEMAND


        -against-


MEGAN J. BRENNAN, Postmaster General ,
and UNITED STATES POSTAL SERVICE,

                    Defendants.

----------------------------------------------------------X

      Plaintiff, Rabbideo Ramrattan, by and through his attorney, Harriet A. Gilliam,

hereby alleges as and for his complaint against Defendants Megan J. Brennan, Postmaster

General and the United States Postal Service, as follows:

## **PRELIMINARY STATEMENT**

      Plaintiff, Rabbideo Ramrattan, brings this action against his employer, as represented

by Defendant  Meghan  J. Brennan,  Postmaster General.,  pursuant to  42 U.S.C.  Section

2000e-2000e-17 (Title VII) , and  Sections 501 and 504 Rehabilitation Act of 1973,  on account

of his national origin and disability, and in retaliation for having engaged in protected activity

and based upon workplace harassment  , retaliation and discriminationon account of his

disability.  .

1

## JURISDICTION

1.    The jurisdiction of this Court is based upon 28 U.S. C.  1331

## VENUE

2.    The unlawful practices alleged below were committed within the State of New York and County of Queens.

3.    At all times relevant herein, Plaintiff was a resident of Queens Cournty in the Eastern District of  the United States District Court of New York.

4.    The United States Postal Service conducts substantial business in the County of Queens in the State of  New York.

5.    This Court is the proper venue under 28 U.S.C. Section 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.    On March 2, 2017,Plaintiff filed a timely charge of discrimination with the EEOC alleging a violation of his rights under Title VII and the Rehabilitation Act based upon his national origin and his  disability and record of disability.

7.    On   October 10, 2018, Plaintiff was issued a Notice of Right to Sue and received said notice on or about October 13, 2018.  This complaint is filed within 90 days of plaintiff's receipt of the Notice of Right to Sue.

## PARTIES

8.    Plaintiff is an adult  male of  Asian  national origin.

9.    Plaintiff's national origin was common knowledge in his work place

2

10. Plaintiff began his career with USPS on August 3, 2005 at the Jamaica Main Post Office, located at 88-40, 164th St., Jamaica , New York 11432 and remains an employee of the USPS.

11. USPS and Defendant Brennan are employer under Title VII and the Rehabilitation Act.

12. At all relevant times herein, Plaintiff has held the position of City Carrier, in which his essential duties were the following:

a) Sweeping letters/flats mail;
b) Casing letters/flat mail;
c) Pull down and tie out route
d) Deliver mail and parcels

'' 13. At all relevant times herein, Plaintiff was able to perform these essential functions of his position as a Letter Carrier for the USPS, with or without accommodation .

14. In his position as Letter Carrier for the USPS, Plaintiff's manager was Bernice Wallace, an African American adult female.

15. Bernice Wallace was an Officer in Charge and/or Post Master at the USPS Jamaica Main Post Office location and had authority to hire, fire and make personnel decisions.

16. Plaintiff's previous manager was Christina Ruperto, a white female, manager at the USPS Jamaica Main Post Office location who had the authority to hire, fire and make personnel decisions.

**FACTUAL ALLEGATIONS**

17. On February 1, 2011, Plaintiff sustained an injury to his left knee as a result of slipping on ice while on duty, delivering mail.

3

18.  Plaintiff's injury required him to have surgery on August 9, 2011 to repair a torn meniscus.

19.  Plaintiff returned to work on December 2, 2011, on limited duty of 3 hours per day.

20.  Under medical advice, Plaintiff gradually increased his hours of work, until he returned to full duty in or around June, 2012, despite feeling continuous pain and discomfort in his left knee.

21.  Plaintiff continued working in a full time capacity until, July 23, 2013, when the condition of his left knee had gotten progressively worse.

22.  Plaintiff advised his then manager Ruperto that he would be filing for a recurrence of his left knee injury and he and Ruperto filled out the claim for recurrence of injury.

23.  Ruperto, in her statement, indicated that there was "doubt" surrounding the recurrence of Plaintiff's injury and advised plaintiff that the Department of Labor was going to deny his claim..

24.  Relying upon Ruperto's statement and interference with his claim , and despite Plaintiff's doctor's report documenting the recurrence of injury, the DOL denied Plaintiff's claim, thereby denying coverage for benefits, clinical tests and treatments.  This situation also resulted in Plaintiff's right knee being affected because of him having to work with his injured left knee for more than three years before he had a second surgery of a total left knee replacement on January 10, 2017.

25.  At the time of the recurrence of injury, Plaintiff had accumulated over 500 hours of annual leave and over 100 hours of sick leave.

26.  As a result of the recurrence of his injury, Plaintiff was out of work from July 24,

4

2013 until October 1, 2013. During that time, Ruperto applied Plaintiff's accrued time, in spite of Plaintiff's protestation that this was an unauthorized use of his accumulated time.

27.  Plaintiff returned to work on October 2, 2013, in a limited capacity, working 5 hours per day:  The other 3 hours per day should have been covered as  leave without pay, as Plaintiff had requested.

28.  The Defendants, through the manager Wallace, took repeated actions to  alter time records, resulting in the increasing the time of Plaintiff's , Route 6 , forcing Plaintiff to rush to complete his route.

29.  Ruperto falsely accused Plaintiff of not doing his work.  Ruperto falsely claimed that Plaintiff had a problem doing undertime  **,** an assignment to an open route to either sweep letters/ flat mail and separate parcels by hours, or sweep the letter trays (DPS) and pull down and tie out route,  while in actuality, hewas doing this on a daily basis before she was assigned to Plaintiff's office, while she was assigned to Plaintiff's office and after she had left Plaintiff's office.

30.  Wallace falsely accused Plaintiff of not completing his work assignment on time, failing to take into account his medically imposed limitations.  .

31.  Klaiber unnecessarily followed Plaintiff on his route, based on false allegations by carriers that Plaintiff was "chilling on his route"

32.  Klaiber has lied and submitted false information to the EEOC as follows:

   a)  She lied about her interaction with Plaintiff regarding his medical deficiencies/ Limitations or medical updates:  She was not part of that process;

   b)  She lied about Plaintiff being out of work between January and June, 2016, Which was never the case;

   c)   She falsely stated that Plaintiff did not have leave time on January 4, 23, 25, 26, 2016, which in fact he did have.

## AS AND FOR A FIRST CAUSE OF ACTION- VIOLATION OF
## SECTION 501 – DISCRIMINATION

33.  Plaintiff realleges the allegations in paragraphs 1 through 32 of the Complaint as fully set forth herein.

34.  Defendants are employers under the Rehabilitation Act.

35. Plaintiff  is a qualified  individual with a disability as defined by the Rehabilitation Act.

36.  Plaintiff  has a physical injury to his left knee which substantially limits major life activities of walking and working and the employer was aware of this disability,  Plaintiff was able to perform the essential duties of his job with or without a reasonable accommodation.

37.  Plaintiff made a request of manager Wallace, for a reasonable accommodation in light of his documented disability and record of disability.

38.  With a reasonable accommodation, of reduced hours and reduced work load, Plaintiff could perform the essential functions of his job for which he was hired.

39.  Instead of accommodating Plaintiff's request for the reasonable accommodation  Manager Wallace and others in management in that he had additional street time added to his route, making his route longer than it should have been.  This, along with management's lateness in getting all mail and parcels to Plaintiff on time,  further caused Plaintiff's work hours to exceed the seven hour day which had been approved  by his doctor, based on his disability.

40 Plaintiff was also treated less favorably than employees without disability with respect to overtime pay,  Because of Plaintiff's restrictions, the extra time over his 7 hours should have been reassigned for delivery to another carrier.

6

41.  Plaintiff was forced to work his 30 minute lunch time and his 2 ,10 minute breaks in an attempt to avoid exceeding his restricted time.

42.  Managers Ruperto and/or Wallace, applied Plaintiff's sick time instead of leave without pay as he had requested, thereby resulting in the depletion of Plaintiff's sick time for which he was not reimbursed under his on the job DOL claim, as he would have been had his request to be on leave without pay been honored by his supervisors.

43.   Plaintiff's attendance records were tampered with, resulting in his protected FMLA l leave being converted to unprotected sick leave .

44.  Upon information and belief, Plaintiff was treated differently that other employees who had no disability .

45.  Plaintiff was treated differently by manager Wallace, manager Christina Ruperto, supervisor Geoffrey Hager and supervisor Bernadette Klaiber,  on account of his disability, than employees similarly situated in terms of job title, duties and responsibilities and supervision, in that additional time was illegally and wrongly added to Plaintiff's route  , which cause his route to be longer than it should have been, given his medical restriction of working seven hours a day.

46.  Manager Wallace and others in management also treated Plaintiff differently than similarly situated carriers by being late in getting all mail and parcels to Plaintiff , which caused his work time to exceed the seven hour day which had been approved under his disability.

47.  Similarly situated employees without disability were paid overtime for hours worked In excess of the their schedule:  Plaintiff was not.

48.  Because of Plaintiff's physical restrictions and disability resulting in a seven hour shift, management should have reassigned the extra time over the seven hours for delivery by another carrier, but failed to do so.

49.  As a result of the discriminatory treatment Plaintiff received, he suffered loss of accrued time, mental anguish  and hurt and humiliation.

### AS AND FOR A SECOND CAUSE OF ACTION- RETALIATION ON ACCOUNT OF DISABILITY

50.  Plaintiff realleges the allegations of paragraphs  1 through 48 of the complaint as fully set forth herein.

51.  Plaintiff engaged in protected activity in complaining to his managers Ruperto and Wallace about his restricted schedule , changing his hours of work.

52.  Plaintiff also complained to management about having to do "undertime"  almost on a daily basis, which was more than what similarly situated employees without a disability had to do.

53.  Plaintiff  requested of management assistance, on account of his disability, and because of this request he was retaliated against by having his scheduled reporting time changed.

54.  When Plaintiff complained to management that other carriers were treated more favorably and were allowed to misdeliver or not deliver mail or parcels on his route,  leaving bags of mail and parcels in relay boxes  undelivered for up to a week, Plaintiff was required, within  his restricted time, to deliver the mail and parcels which other carriers had failed to deliver, thereby adversely affecting his terms and conditions of employment.

55.  After lodging the complaints about discriminatory treatment, only Plaintiff, and not

8

similarly situated employees who did not complain, was  subjected to an adverse employment action without legitimate reason and was retaliated against  for reporting the illegal delay in delivering of First and Second Class Mail and Parcels, which was in violation of USPS policies.

56.  Plaintiff was also retaliated against for making a request for a reasonable accommodation.

57.  As a result of the retaliatory actions, Plaintiff has suffered physical  injury and Mental anguish and hurt and humiliation. .

## AS AND FOR A THIRD CAUSE OF ACTION- HARASSMENT/ HOSTILE WORK ENVIRONMENT

58.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 57 of the Complaint as fully set forth herein.

59.  As a result of and on account of his disability, Plaintiff was subjected to constant negative references to his disability and restricted/light duty.

60.  Plaintiff was subjected to a barrage of negative statements about his disability and was told by supervisor Geoffrey Hager, "You are on your own" when he requested assistance to ensure that he did not work in excess of his restrictions/ limitations.

61.  Plaintiff was routinely forced to work more hours than his restrictions allowed.

62.  Remarks were made by Manager  Wallace to Supervisor Geoffrey  Hager , in response to Plaintiff's submission of leave paperwork after his knee had flared up and he was unable to continue working, stating " Tell him not to come back"

63.  As a result of the harassment and hostile work environment on account of his disability, Plaintiff suffered physical and emotional damage, and hurt and humiliation.

**AS AND FOR A FOURTH CAUSE OF ACTION- TITLE VII DISCRIMINATION ON ACCOUNT OF RACE/NATIONAL ORIGIN**

64.  Plaintiff realleges all the allegations in the complaint in paragraphs 1 through 63 as fully set forth herein.

65.  Plaintiff is of Asian race, born in  Guyana, South America.

66. Plaintiff was treated differently and less favorably than the black employees in the the following respects:

a)   Plaintiff was being assigned "undertime" daily by his managers, while similarly situated Black mail carriers were not;

b)   Similarly situated Black employees were allowed to engage in congregating and non-work conversations for extended periods of time while on the clock, and Plaintiff on the other hand had to work through his lunch and two breaks.

c)   Similarly situated Black employees were not disciplined for non-deliveries of mail and parcels, while Plaintiff was reprimanded for reporting these acts of misconduct and violation of USPS  policies.

67.  Plaintiff was treated differently than similarly situated Black employees, with respect to the granting of leave time:  Plaintiff was denied leave time for legitimate reasons of family death, while Black employees were routinely granted leave for any reason.

68.  As a result of the differential treatment on account of his national origin, Plaintiff suffered physical and mental injury and anguish and hurt and humiliation.

10

WHEREFORE,  Plaintiff demands judgment against Defendant as follows:

1.    For all damages recoverable as a matter of law for Ruperto, Wallace's/ USPS violation of Title VII as for and in regard to its deprivation of Plaintiff's federally protected rights.

2.    For all damages recoverable under the Rehabilitation Act.

3.    Compensatory damages.

4.    Equitable and injunctive relief.

5.    For reasonable attorney's fees and costs; and

6.    For such further relief as the court may deem just and proper.

### JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated:  Riverhead, New York
         January 10, 2019

/s/ HARRIET A. GILLIAM
_____

Harriet A. Gilliam
Attorney for Plaintiff
21 W. Second Street
Riverhead, NY  11901
(631) 369-1400

11